**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

AUTMN BERTELS,

     Plaintiff,

     v.

FARM BUREAU PROPERTY & CASUALTY
INSURANCE CO.,

     Defendant.

Case No. 20-2298-JWB-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff Autumn Bertels' ("Bertels") Motion for Leave to File a Second Amended Complaint. (ECF 64.) Bertels seeks to add an additional breach of fiduciary duty theory under her existing Count I, a common law claim for intentional infliction of emotional distress ("IIED"), and a prayer for punitive damages. The deadline for motions to amend the pleadings was October 9, 2020. Bertels has not shown good cause to extend this deadline by three-and-a-half months to January 29, 2021, when she filed this motion one week before the discovery deadline. Bertels justifies the belated amendment by relying on new information that she claims she learned in discovery, but the only new information she identifies is deposition testimony that supports the same facts she previously pleaded. Indeed, her proposed second amendment complaint simply adds new legal theories to the same factual allegations—demonstrating that she could have pursued these theories from the outset so that defendant Farm Bureau Property & Casualty Insurance Co. ("Farm Bureau") would have had fair notice that it needed to explore them in discovery. The court therefore denies Bertels' motion for lack of good cause under Rule 16(b)(4) and as untimely and prejudicial under Rule 15(a)(2).

## I.     BACKGROUND

This case involves an insurance dispute that arises from a tragic auto accident that occurred more than a decade ago.  According to the amended complaint, on October 15, 2010, Bertels was riding with her grandmother Elizabeth Bertels when a vehicle driven by Denver Barr crossed the centerline on U.S. Highway 59 and collided with Elizabeth Bertels' vehicle.  (ECF 5 ¶ 18.)  Bertels alleges that her grandmother bore some responsibility for the accident, in that she was negligent for failing to notice Barr and/or for failing to take evasive action to avoid a collision.  (*Id.* ¶ 19.)  Bertels' grandmother had a Farm Bureau insurance policy that was in effect at the time of the accident.  (*Id.* ¶ 4.)  According to Bertels, Farm Bureau knew or should have known that its insured shared significant fault for the collision and knew of the severity of Bertels' injuries, but, despite this, Farm Bureau did not make timely efforts to settle Bertels' claim.  Instead, Farm Bureau waited more than three years after the accident before it offered to tender the $50,000 policy limit.  (*Id.* ¶¶ 27, 39.)

By that time, Bertels contends that her situation had changed in that she had expended significant time and resources filing a civil action against her grandmother's estate, which would have been unnecessary if Farm Bureau had made a timely settlement offer.  (*Id.* ¶ 45.)  Her condition also had worsened.  (*Id.*)  Bertels and the estate ultimately entered into a covenant-not-to-execute agreement whereby the estate assigned Bertels its rights or causes of action against Farm Bureau in exchange for Bertels' agreement not to execute against the estate.  (*Id.* ¶ 50.) After a bench trial in state court, the judge entered judgment against the estate in the amount of $15,758,245.20 and found the estate bore 60 percent of the fault. (*Id.* ¶ 56.)  Farm Bureau did not intervene in the state-court action, and Bertels states that Farm Bureau took no further action to tender the $50,000 policy limit.  (*Id.* ¶¶ 67-98.)

Bertels filed this case on June 18, 2020, asserting claims against Farm Bureau for (Count I) negligence, breach of fiduciary duty, and bad faith, and (Count II) breach of contract, as the assignee of her grandmother's estate.[1]  Farm Bureau denies that it acted in bad faith and asserts various defenses to Bertels' claims.  (*See generally* ECF 11.)

On September 2, 2020, the court entered a scheduling order.  (ECF 18.)  Among other things, it set a deadline for motions to amend the pleadings by October 9, 2020, and a deadline to complete discovery by February 5, 2021.  (ECF 18, at 2.)  Throughout November, Bertels deposed multiple current and former Farm Bureau employees and lawyers involved in the underlying litigation and claim.  Those include the depositions of retired employee Charles Petrik on November 4; current employee Ray Will on November 9; Lee Brummit, a lawyer retained by Farm Bureau to represent the estate in the underlying litigation, on November 10; current employee James Wagoner on November 17; current employee Robert Brewster on November 18; and retired former in-house counsel Gale Juhl on November 19.

In December, a dispute arose between the parties regarding Farm Bureau's Rule 30(b)(6) deposition.  Bertels argued it needed a Rule 30(b)(6) deposition of Farm Bureau, but Farm Bureau opposed the deposition because it would have exceeded the scheduling order's limit on the number of depositions.  (*See generally* ECF 53.)  The court convened a discovery conference to discuss the issue.  During that conference, the parties agreed on a procedure to try to stipulate that certain fact-witness testimony would be binding on Farm Bureau pursuant to Rule 30(b)(6) in order to reduce or eliminate the need for further depositions.  (ECF 59, at 1.)  The court also granted limited extensions of discovery deadlines for expert disclosures and depositions.  On

---

[1] Bertels filed an amended complaint on June 25, 2020.  It is largely identical to her amended complaint filed on June 18, except the amended complaint dropped Bertels' grandmother's estate as a party in order to maintain complete diversity of citizenship.

December 23, Bertels sent Farm Bureau a list identifying certain fact-witness deposition testimony on various Rule 36(b)(6) topics that Bertels proposed Farm Bureau agree to be bound by.  (ECF 65-2.)  Farm Bureau responded on January 6, 2021, agreeing to be bound by the identified deposition testimony.  (ECF 64-3.)

On January 29, Bertels filed this motion for leave to file a second amended complaint. As justification for the belated amendment, Bertels relies on the parties' January 6 agreement that Farm Bureau would be bound by the identified deposition testimony.

## II.    ANALYSIS

When a party moves to amend after the scheduling order deadline, the moving party must (1) demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4), and (2) satisfy the standards for amendment under Rule 15(a).  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  Whether to grant a motion to amend is within the court's sound discretion.  *Id.*

### A.  Bertels has not Established Good Cause under Rule 16(b)(4).

"Rule 16(b)(4) is arguably more stringent than Rule 15[.]" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018).  It provides that a scheduling order "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  To establish good cause, the moving party must show that it could not have met the motion-to-amend deadline despite "diligent efforts."  *Husky Ventures*, 911 F.3d at 1020.  In the context of a motion to amend to assert affirmative claims, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."  *Gorsuch*, 771 F.3d at 1240.  On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed."  *Id.*  If a moving party fails

to demonstrate good cause, the court may deny the motion on this basis alone. *See id.* at 1242 (declining to consider Rule 15(a) when there was not good cause under Rule 16(b)); *see also Husky Ventures*, 911 F.3d at 1019 (affirming denial of a motion to amend for lack of good cause).

A party is not diligent in attempting to meet a scheduling order deadline for amendments to the pleadings by pointing to new information learned through discovery when the moving party had long known of other information that would support the same amendments, which is the case here. Bertels argues good cause exists because she moved to amend within thirty days of Farm Bureau's January 6 agreement to be bound by certain fact-witness testimony. But this stipulation was not "new information." It relied on deposition testimony given in November, which also was not new information. That deposition testimony merely supported the factual allegations that Bertels had previously pleaded and already knew. It did not put Bertels on notice of new claims for the first time. Because of this, as explained below, Bertels has not shown good cause to extend the scheduling order deadline to amend the pleadings.

### 1. **Bertels could have asserted the amendments from the outset, which does not demonstrate good cause for a 3.5-month extension of the scheduling order deadline to amend the pleadings.**

Bertels was not diligent in seeking to amend to assert her proposed amendments, which were capable of being asserted from the outset and certainly by the October 9 deadline to amend the pleadings. Bertels argues that new information justifies the amendment. But the specific deposition testimony she references establishes only that Farm Bureau closed its claim file without offering to settle with Bertels; Farm Bureau knew it should have tendered policy limits within the first few months of the accident because it knew Bertels' injuries were catastrophic and its insured would likely be attributed some portion of fault; and Farm Bureau did not take

action to prevent its insured's estate from being sued.  Bertels argues this is new information that demonstrates for the first time that Farm Bureau's conduct was outrageous, willful, wanton, and malicious.  This is not new information.  Bertels previously pleaded that Farm Bureau should have tendered the policy limit immediately because it knew that Bertels' injuries were catastrophic and her grandmother bore some level of fault;[2] that Farm Bureau unnecessarily delayed in doing so;[3] and, by failing to tender the policy limit, Farm Bureau forced Bertels to sue the estate for recovery.[4]  In other words, this testimony simply supports her existing case theory. It did not put her on notice of potential additional claims or theories of recovery.

This is further illustrated by Bertels' proposed second amended complaint, which reveals that Bertels is relying on the same set of facts previously pleaded.  (*See generally* ECF 68.)   It follows then that if these facts are sufficient to state a claim for breach of fiduciary duty, IIED, and a prayer for punitive damages, they were sufficient to have stated a claim when Bertels filed this case on June 18.  Indeed, Bertels herself argues that "[a]ll claims rely on the proposition that Farm Bureau wrongfully and inadequately handled plaintiff's claims against Farm Bureau's

---

[2] Plaintiff's amended complaint alleges that "Farm Bureau knew or reasonably should have known from the beginning of its investigation that Autumn's injuries and damages were catastrophic in nature and exceeded in cost the $50,000 bodily injury liability limit available under the Farm Bureau insurance policy.  Farm Bureau knew or reasonably should have known from the beginning of its investigation that its insured, Elizabeth Bertels, shared significant fault for the wreck in which Autumn was seriously injured."   (ECF 5 ¶ 25.)

[3] Plaintiff's amended complaint alleges that "Farm Bureau made no efforts to settle with Autumn in a timely manner" and "did not timely offer its policy limits to Autumn even though liability was clear and Autumn's injuries were catastrophic."  (*Id.* ¶¶ 29, 31.)

[4] Plaintiff's amended complaint alleges that, "[n]early two years later, on October 5, 2012, Autumn, by and through her Next Friend, Lisa Swigert, filed *Plaintiff's Petition for Damages*, Case No. 12AW-CC00423, in the District Court of Andrew County, Missouri, against Elizabeth Bertels and her estate, alleging that Elizabeth Bertels' negligent failure to exercise the highest degree of care while operating her motor vehicle directly caused or contributed to cause Autumn's injuries." (ECF 5 ¶ 30.)

insured and inexplicably failed to settle with plaintiff in a timely manner.  Indeed, defendant is already aware of all relevant information."  (ECF 65, at 11.)  But so was Bertels.  Because Bertels already had the information she needed to assert these claims and damages when she filed suit—and still had that information by the October 9 deadline for amendments—she cannot establish that she could not meet that deadline despite diligent efforts.

2. **Even after the November fact-witness deposition testimony, Bertels waited two more months to move to amend.**

Even if the court agreed (which it does not) that the November deposition testimony put Bertels on notice of the potential amendments for the first time, Bertels waited at least two more months after these depositions before moving to amend.  Even when a party learns of new information through discovery, it must still act diligently in moving to amend.  *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015) (affirming the district court's finding of no good cause when plaintiff learned of new information after the deadline for amendments but waited months before moving to amend).  It is not enough to simply point to new information learned after the deadline for amendments.  *Id.* (stating that this situation is the same as knowing of the conduct but failing to timely raise the claims).  Rather, the moving party must demonstrate good cause to extend the deadline up to the time it filed its motion to amend. *See Vivint, Inc. v. N. Star Alarm Servs., LLC*, No. 216CV00106JNPEJF, 2018 WL 3215663, at *3 (D. Utah Feb. 5, 2018) ("The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend"), *report and recommendation adopted in part sub nom. Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 216CV00106JNPEJF, 2018 WL 1449516 (D. Utah Mar. 23, 2018).

Bertels contends that the lag between the November depositions and the date she filed the current motion on January 29 is justified because the January 6 stipulation that Farm Bureau would agree to be bound by certain portions of the deposition testimony somehow triggered the amendment. This does not demonstrate diligence. A party does not need to wait to seek leave to amend until it secures the opposing party's *agreement* to facts that supposedly support an amendment. For example, Bertels argues the binding Rule 30(b)(6) testimony "confirmed and exceeded plaintiff's initial allegations, giving plaintiff a good faith basis under Fed. R. Civ. P. 11 to assert the claims raised in her Second Amended Complaint." (ECF 65, at 9.) But Rule 11 simply requires that a plaintiff have made a reasonable inquiry that claims are supported by existing law or a nonfrivolous argument in favor of a departure from existing law, and that factual contentions "have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(2)-(3). Bertels certainly would have satisfied Rule 11 standards by making claims based on fact-witness deposition testimony. The rule does not require any quantum of evidence. So Bertels has not shown diligence by waiting two months to move to amend after she learned of the information she says gives rise to the amendments. *See Husky Ventures*, 911 F. 3d at 1020 (knowing of "new information months before the motion to amend—fatally undercuts [the] ability to demonstrate good cause" (internal quotations omitted)).

### 3.  Bertels' other arguments do not bear on the good-cause standard.

Bertels makes additional arguments regarding good cause, but they do not bear on the whether she could have met the scheduling order deadline with diligent efforts. For example, she notes that the same claims arise from the same subject matter as set forth in her initial complaint, that she's seeking to amend before a trial date is set, and the proposed amendment

would not impact discovery.  (ECF 65, at 7-8.)  These arguments more appropriately bear on the nature and extent of any prejudice to Farm Bureau by virtue of the amendment—a potential ground for denying a motion to amend under Rule 15, which is separate and distinct from Rule 16's good-cause analysis.

### 4.   **Bertels' motion is denied because she has not shown good cause.**

In sum, Bertels has not shown that she acted diligently by seeking to amend to assert a new theory, claim, and prayer for relief based on facts she alleged from the outset.  Even if the court adopted Bertels' view (which it does not) that the November deposition testimony put her on notice of the potential amendments for the first time, she needlessly waited to file the current motion until January 29.  The fact that she obtained a stipulation on January 6 regarding binding Rule 30(b)(6) testimony is not relevant.  But, even if the court were to accept January 6 as the triggering date, Bertels still has not explained why she waited another three weeks before filing her motion a week before the close of discovery, with the motion not becoming ripe until after the close of discovery.  Accordingly, the court denies the motion as untimely because Bertels has not shown good cause to extend the scheduling order deadline.

### B.   **Farm Bureau Has Shown Undue Delay and Undue Prejudice.**

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires.  FED. R. CIV. P. 15(a)(2).  The purpose of this rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted).  The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive,

failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson*, 606 F.3d at 1267 (in the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that there is a presumption in favor of amendment absent such a showing "or a strong showing of the remaining *Forman* factors"). Whether to grant a motion to amend is within the court's sound discretion. *Gorsuch,* 771 F.3d at 1240.

Farm Bureau argues that the court should deny the motion based on undue delay, undue prejudice, and futility of the amendment in that Bertels' IIED claim and prayer for punitive damages are subject to dismissal. The court agrees that Bertels has unduly delayed and that Farm Bureau would be unduly prejudiced by the belated amendment. Farm Bureau's arguments regarding futility are less compelling,[5] but the court will not decide her futility arguments because the court is already denying her motion for other reasons.

---

[5] As an example, Farm Bureau argues the IIED claim is subject to dismissal because the claim cannot be assigned by the estate, and the estate cannot experience mental distress. In turn, Farm Bureau contends Bertels' claim for punitive damages also fails because she cannot request punitive damages on behalf of the estate. But this argument mischaracterizes the proposed IIED claim, which Bertels seeks to bring on behalf of herself, not as an assignee of the estate. (*See* ECF 64-1 ¶ 119 ("Farm Bureau's conduct toward plaintiff . . . was extreme and outrageous.").) While some of Farm Bureau's other arguments are better developed—for example, that its conduct was not directed at Bertels and does not rise to the level of outrageous—Farm Bureau does not cite any factually analogous case that conclusively demonstrates that Bertels' IIED claim would be barred on this basis at the pleading stage. In order to deny a motion to amend based on futility, the court must have a high degree of certainty that proposed claim would be subject to dismissal, which is lacking here. *See Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (amendment should typically be allowed unless it is "patently obvious" that the

### A. Bertels Has Unduly Delayed.

Delay alone is not enough to deny a motion to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).  At some point, however, delay becomes undue when it places an unwarranted burden on the court or when it becomes prejudicial by placing an unfair burden on the opposing party.  *Id.*  The district court must focus primarily on the reasons for the delay. *Id.*  Denial of leave to amend is appropriate when the movant lacks an adequate explanation for the delay.  *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

Bertels unduly delayed for largely the same reasons that the court cannot find good cause to extend the scheduling order deadline to amend the pleadings.  *See Hans v. Bd. of Cty. Commissioners of Shawnee Cty., Kansas*, No. 16-4117-DDC, 2017 WL 3781837, at *3 (D. Kan. Aug. 31, 2017) ("Rule 15(a)'s undue-delay analysis is similar to the good-cause analysis[.]"). She lacks an adequate explanation why she did not plead these matters from the outset, by the October deadline for amendments, or shortly after the November depositions that she claims gives rise to the amendments.  Moreover, this case stems from an insurance dispute spanning more than a decade that involved significant separate litigation.  While minor nuances may have been unknown—*e.g.*, when a Farm Bureau closed a claim file—both parties were amply aware of the other's actions or inaction and the significant injuries Bertels sustained.  At this point, all parties deserve a timely resolution of their dispute, which would not be furthered by allowing a late amendment that that Bertels should have included as part of her original complaint.

---

plaintiff could not prevail); *see also Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC, 2015 WL 1957782, at *3 (D. Kan. Apr. 29, 2015) ("A party opposing amendment on the ground of futility must show more than a possibility that a claim would not withstand a motion to dismiss; it must be established that the claim would be dismissed.").

**B. Farm Bureau Would be Unduly Prejudiced.**

Undue prejudice is the most important factor in determining whether to allow an amendment to the pleadings. *See Minter*, 451 F.3d at 1207. A party may be unduly prejudiced when an amendment unfairly affects a party preparing its defense—for example, when the amendments "arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* "While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants." *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018); *see also* 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (recognizing a plaintiff typically will not be precluded from amending "simply because that amendment may increase defendant's potential liability").

The court is persuaded that Farm Bureau would be unduly prejudiced by the amendment given the late stage of the case and the fact that discovery is now closed.[6] Although the amendments arise from the same subject matter already pleaded, Farm Bureau argues that it would need discovery on the extent of Bertels' proposed mental-distress damages, which she alleges encompass "mental suffering, mental anguish, nervous shock, and any of the highly unpleasant mental reactions, such as fright, horror, grief, shame, embarrassment, anger, chagrin, disappointment, and worry." (ECF 64-1 ¶ 19.) Bertels does not directly address the issue of discovery on her proposed new damages but generally states that "discovery is ongoing with

---

[6] Bertels argues that she would be unduly prejudiced if the court denied the motion because the court would be barring her claims. But the *Foman* factor of undue prejudice goes to whether the opposing party would be unduly prejudiced by the amendment, not whether the moving party would be prejudiced if the court disallowed the amendment. Moving parties inevitably suffer some level of prejudice every time the court denies their motions, but this certainly does not present a reason to grant these motions.

additional depositions scheduled." (ECF 70, at 3.) This is inaccurate. Discovery closed on February 5. The court granted a limited extension of expert discovery deadlines, but this would not address Farm Bureau's problem of needing discovery on proposed new damages. Moreover, the lack of discovery would potentially hamper Farm Bureau in preparing the pretrial order, which is due two weeks after Bertels filed this motion.

## III.   CONCLUSION

Because Bertels has not shown good cause under Rule 16(b)(4) to extend the scheduling order deadline to amend the pleadings, the court denies her motion as untimely. The court also denies her motion under Rule 15 because Bertels unduly delayed in seeking leave to amend, and Farm Bureau has shown that it would be unduly prejudiced by the amendment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF 64) is denied.

**IT IS SO ORDERED.**

Dated February 12, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
