IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AUTUMN BERTELS,

        Plaintiff,

v.                                                             Case No. 20-2298-JWB

FARM BUREAU PROPERTY AND
CASUALTY INSURANCE CO.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motions for summary judgment (Doc. 84) and sanctions (Doc. 99), and Defendant's motions for summary judgment (Doc. 86) and exclusion of expert testimony (Doc. 88.) The motions are briefed and ripe for review. (Docs. 85, 87, 89, 91, 92, 93, 97, 98, 100, 101, 102.) For the reasons stated herein, Plaintiff's motions (Doc. 84, 99) are DENIED. Defendant's motion for summary judgment (Doc. 86) is GRANTED, which renders its motion to exclude expert testimony (Doc. 88) MOOT.

**I.**         **Background[1]**

This case presents tragic facts resulting from a two-vehicle automobile accident on October 15, 2010. Plaintiff was a passenger in a vehicle operated by her grandmother, who also served as her primary guardian. Plaintiff suffered serious bodily injuries and damages arising from the accident. The facts are voluminous with counsel on both sides advocating zealously to present all facts in the best light for their clients. For the court's purposes, however, only the relevant and material facts to these summary judgment motions are set forth.

---

[1] Unless noted otherwise, the court draws all facts from the stipulated facts in the Pretrial Order (Doc. 83.)

In this case, a pivotal uncontroverted fact is that Plaintiff never made a claim to Defendant prior to filing suit against her grandmother on October 5, 2012. (*See* Doc. 93 at 10). This fact is crucial to Plaintiff's claims of breach of contract for bad faith and negligent refusal to settle. Plaintiff argues that Defendant breached its duties owed to its insured (Plaintiff's grandmother) by failing to timely offer policy limits to settle Plaintiff's claim, which allegedly forced Plaintiff to file suit and incur additional damages. However, Plaintiff overstates Defendant's duty to initiate settlement negotiations. Under Tenth Circuit law, Plaintiff was required to at least give some notice of an impending claim before Defendant's duty to initiate settlement was triggered. Instead of giving notice, Plaintiff's counsel filed suit, told Defendant that he was going to send a settlement offer, and then failed to act on Defendant's conditional offer of policy limits in February 2013. Throughout all of this, Plaintiff's counsel never sent Defendant a settlement offer as he promised, and now claims it was Defendant's unwillingness to settle for policy limits that forced Plaintiff to continue down the path of litigation. Under these facts, as explained below, Defendant is entitled to summary judgment.

A.   **Actions Prior to October 5, 2012**

On October 15, 2010, Elizabeth Bertels ("Elizabeth") was driving her vehicle south on U.S. Highway 59. Elizabeth was transporting four of her grandchildren—Autumn Bertels ("Plaintiff"), Amber Bertels ("Amber"), Skylar Ellerman ("Skylar"), and Nicole Ellerman ("Nicole"). At the same time, another driver named Denver Barr ("Barr") was driving north. Sadly, Barr—likely having fallen asleep at the wheel—crossed the center line, went through the lane of travel of Elizabeth's oncoming car, onto the west shoulder, and then changed directions and veered back onto the road and into Elizabeth's southbound lane, thereby colliding with her car. Both Elizabeth and Barr died at the scene of the accident. Amber, Skylar, and Nicole were not seriously injured.

However, Plaintiff suffered a severe spinal cord injury and paralysis from the chest down. She was only nine years old.

At the time of the accident, Elizabeth had liability insurance through Farm Bureau Property and Casualty Insurance Co. ("Defendant"). Elizabeth's insurance policy provided bodily injury limits of $50,000 per person and $100,000 per accident. On October 18, 2010, Defendant received notice of the wreck and began investigating it. That same day, Jim Wagoner ("Wagoner"), Defendant's adjuster and bodily injury specialist, reviewed the facts as reported when the claim was set up, including the Kansas Highway Patrol ("KHP") crash log and a newspaper article. Wagoner further spoke with a claims adjuster from Barr's insurance carrier and confirmed that Barr had liability coverage. Next, Wagoner spoke with Ron Bertels ("Ron")—Elizabeth's son and the family's spokesperson. Wagoner provided Ron with Barr's insurance information and discussed the surviving passengers' medical conditions.

On October 19, 2010, Defendant sent a letter to the KHP requesting a copy of its report. Wagoner then photographed both vehicles and the accident scene. On November 10, 2010, Defendant received the KHP report, which confirmed the story as told above and that Elizabeth never left her lawful lane of travel. Specifically, the report states that the accident occurred when Barr "crossed into the opposite lane of traffic and to the shoulder" and then "drove into the path of" Elizabeth's vehicle. Between October 19 and November 30, 2010, Defendant paid Personal Injury Protection ("PIP") benefits for all passengers in Elizabeth's vehicle until the PIP coverage limits were exhausted. As of November 30, 2010, Defendant maintained its initial liability determination that Barr was 100% at fault based upon the facts before it.

On December 2, 2010, Defendant sent Ron a copy of the KHP report and informed him it had faxed a copy to Barr's insurer as well. On December 3, 2010, Brenda Bertels, Ron's wife,

informed Defendant's PIP adjuster that the family retained Steven Sanders ("Sanders") as an attorney and that Elizabeth did not have a will. Defendant's subrogation team then told Sanders the PIP benefits it had paid. On December 8, 2010, Sanders requested that Defendant waive PIP subrogation for Plaintiff and Elizabeth, which it promptly did. In support of Sanders' waiver request, he included a letter from Barr's insurer that stated the KHP report "confirms that our insured [Barr] was at fault for this loss." (Doc. 87 at 4.) Under the belief that there was no liability on the part of Elizabeth, Defendant closed the file on March 7, 2011.

On September 22, 2011, Sanders filed a wrongful death lawsuit, on behalf of Elizabeth's heirs, against Barr and Barr's estate. (*Id*. at 6.) Sanders did not allege Elizabeth had any fault in the accident. (*Id*.) Following settlement of the wrongful death suit, Sanders then waited until October 5, 2012 to file two lawsuits: (1) one by Plaintiff against Elizabeth, Barr's estate, and Ford Motor Company, and (2) another by Amber, Skylar, and Nicole against Elizabeth and Barr's estate. At no point prior to filing suit did Plaintiff, or Ron as the family's spokesperson, ever make any sort of a claim known to Defendant. (Doc. 93 at 9-10.)

**B.     Actions Post October 5, 2012**

On November 26, 2012, attorney Lee Brumitt ("Brumitt") was hired by Defendant to represent Elizabeth's estate. Of note, on December 28, 2012, Sanders wrote Defendant a demand letter for Amber, Skylar, and Nicole, offering to equally split $50,000 from Elizabeth's liability coverage. Sanders further stated that he also represented Plaintiff "and will be sending a separate settlement offer to you on her behalf." Sanders never sent a settlement offer.

On February 20, 2013, Brumitt and Sanders had a telephone conversation about the case—but both give conflicting stories concerning whether Brumitt made a policy-limits offer or not. In his deposition, Brumitt maintains that he offered the $50,000 policy limits for Plaintiff's claim—

4

which Sanders accepted—but also Sanders wanted to wait until he was finished with his case against Ford before finalizing the settlement with Defendant. (Doc. 98-11 at 7-8.) In his affidavit, Sanders denies these contentions that any offer was made by Brumitt or that he accepted any settlement offer. (Doc. 98-13 at 2.) However, Sanders' contemporaneous notes of the conversation, attached to his affidavit, states that Brummit "told me that he knew that I had not made a demand, but he expected a demand from me in the future. He told me that, when we make a demand, [Defendant] is prepared to pay the full $50,000 policy limit to her." (*Id*. at 4.) Sanders responded, "[t]hank you for the information and we'll keep that information in our hip pocket." (*Id*.) Later in his notes, Sanders elaborated that at no point did he say "[t]hank you; we'll get that matter settled," or "[y]our offer is accepted." (*Id*.)

More than a year after this phone conversation, on August 25, 2014, Sanders filed a petition in Jefferson County, Kansas, to open a probate estate for Elizabeth ("the Estate"). This was the first probate filing since Elizabeth's death. David McCollum ("McCollum") was the Estate's special administrator. Soon thereafter on September 26, 2014, Plaintiff filed suit against the Estate in the District Court of Jefferson County, Kansas. The petition alleged that Elizabeth's negligent operation of her vehicle caused or contributed to Plaintiff's injuries.

On November 14, 2017, the case was transferred to the District Court of Johnson County, Kansas. During this three-year gap, Brumitt resigned as counsel for the Estate and was replaced by Brad LaForge ("LaForge"). Thereafter, the Estate entered into a Covenant Not to Execute ("the Agreement") with Plaintiff. The Agreement assigned the Estate's rights or causes of actions against Defendant to Plaintiff; in exchange, Plaintiff agreed to not execute any judgment against the Estate and to pay attorneys' fees for counsel hired for the Estate. Among other things, the Estate agreed to a bench trial in which it waived: (1) the right to a jury trial; (2) all objections to

5

Plaintiff's evidence; (3) the right to cross-examine witnesses; (4) the right to present evidence; (5) the right to assert any defense; and (6) the right to appeal. Following the bench trial, the judge entered judgment against the Estate and in favor of Autumn in the amount of $15,758,245.20. (Doc. 85-3 at 15.) The Estate was allocated 60% of the fault for the wreck.

Here, having stepped into the shoes of the Estate, Plaintiff alleges a breach of contract for bad faith and negligent refusal to settle. Plaintiff argues Defendant breached its contractual duties owed to its insured to perform its obligations in good faith and without negligence by refusing to settle Plaintiff's claim by tendering the policy limits in a timely manner, thereby forcing Plaintiff to sue the Estate and obtain the ensuing judgment. Defendant denies any breach of contract-based claim and, among a litany of other defenses, argues no damages to the Estate were caused by, or traceable to, Defendant's actions.

**II.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Summary judgment may be granted if the

non-moving party's evidence is merely colorable or not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.   Analysis

Plaintiff contends that Defendant acted with negligence and bad faith when it did not "begin settlement negotiations, even in the absence of a settlement demand by [Plaintiff]." (Doc. 85 at 14.) Plaintiff argues that because Defendant did not tender the policy limits in a timely manner, she was forced to sue the Estate and seek damages in excess of the policy limits. Defendant asserts that Plaintiff "exaggerates the duty of an insurer to initiate settlement negotiations . . ." (Doc 97 at 2.) Instead, Defendant argues "the Estate and [P]laintiff's family were one and the same, and gave no notice to [Defendant] that [P]laintiff was making a claim against the Estate." (*Id*. at 3.) The importance of this duty to initiate settlement negotiations cannot be overstated, as Plaintiff admits she has never made a settlement offer or claim to Defendant prior to filing suit. (Doc. 93 at 10.)

### A.   Motions for Summary Judgment (Docs. 84, 86.)

Under Kansas law, an insurer may have a duty placed upon it to initiate settlement negotiations—even in the absence of a settlement offer by the claimant. *Coleman v. Holecek*, 542

7

F.2d 532, 537 (10th Cir. 1976). "The fiduciary relationship of the insurer and the insured imposes a duty upon the insurer to make reasonable efforts to negotiate a settlement of a claim against the insured." *Smith v. Blackwell*, 14 Kan. App. 2d 158, 163 (1989). However, the Kansas Supreme Court rejected the suggestion that "any time an insurance agent acquires knowledge of some injury to a policyholder it becomes the company's duty to initiate an investigation and offer a settlement-without any claim being made . . ." *Sloan v. Emp'rs Cas. Ins. Co., Dallas, Texas*, 214 Kan. 443, 445 (1974). Rather, the court decided that "the insured has some duty to give notice to his company of his loss, **and** of the fact that he is making a claim under his policy, before the company is obligated to move." *Id*. (emphasis in original); *see also Roberts v. Printup*, 422 F.3d 1211, 1216 (10th Cir. 2005) (finding "that an insurance company does not have a duty to the insured to initiate negotiations prior to a claim being made.").

Here, it is uncontroverted that Plaintiff never so much as hinted that she was going to make a claim against the insured prior to filing suit. There is nothing in the record evidencing that Plaintiff had or was going to make a bodily injury claim under the liability portion of the insurance policy prior to October 5, 2012. In his efforts to justify turning down any policy limits offer by Defendant, Plaintiff's counsel clings to Kansas case law stating, "all the good faith and settlement offers in the world after suit is filed will not immunize a company from the consequences of an unjustified refusal to pay which made the suit necessary." (Doc. 85 at 18 (citing *Sloan*, 214 Kan. 444)). But Plaintiff's counsel fails to mention that his October surprise was exactly that, a surprise that gave no warning to Defendant before a lawsuit was filed against it. Plaintiff's counsel failed to realize there is a minimal duty placed upon the insured to give notice of the potential of a claim before Defendant was obligated to move. *See Roberts*, 422 F.3d at 1216. Instead, Plaintiff's counsel decided to sit on any potential claim—all the while actively pursuing other suits pertaining

8

to the accident—before jumping the gun and immediately filing suit with no notice to Defendant. As noted by the Tenth Circuit, "it seems odd to think that an insurer should beat the bushes to advise potential claimants to sue or make claims against their insured, especially if there is a possibility of an excess claim." *Id*. This is precisely what Plaintiff's counsel errantly believed—that it was Defendant's duty to sound the alarm for a potential claim.

Moreover, under Kansas law, due to Plaintiff's counsel stating in December 2012 that he would be sending a settlement offer on behalf of Plaintiff, the burden to initiate negotiations "was on plaintiff because [she] had, through counsel, voluntarily assumed that burden." *Sloan*, 214 Kan. 448. "Having chosen that course, plaintiff cannot later complain because the company took [her] at [her] word." *Id*. Plaintiff's counsel makes much ado about not receiving a timely settlement offer from Defendant, but completely fumbles any argument he had concerning bad faith or negligence. Despite putting Defendant on notice that he would send an offer on Plaintiff's behalf, Sanders never followed through with his promise. Instead, Sanders only made an offer on behalf of Skylar, Amber, and Nicole. Even more troubling—Sanders himself states that, on February 20, 2013, Brummit made it clear that Defendant was ready to pay the full $50,000 upon Sanders following through with delivering Plaintiff's settlement offer. This may not have been a formal written offer, but it certainly undercuts any claim by Plaintiff that Defendant was not willing to settle for the policy limits. While Sanders claims no offer was made to him during the phone call, his notes betray him—he plainly admits that he never told Brummit "[y]our offer is accepted." (Doc. 98-13 at 4.) It is abundantly clear that Brummit made a conditional offer to pay the full policy limits. Indeed, the only thing preventing Plaintiff from receiving the policy limits was

Sanders following through with his earlier promise of sending a demand letter to Defendant. Accordingly, Defendant's motion for summary judgment is granted.[2]

### B.     Motion for Sanctions (Doc. 99.)

Plaintiff believes sanctions are appropriate due to Defendant's "false allegations about [Plaintiff's counsel] and its unbridled contempt for [the state court judge] and the judicial system . . ." (Doc. 100 at 4.) The court has the "inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings." *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995) (*citing Chambers v. NASCO, Inc*., 501 U.S. 32, 50 (1991)). Here, the court finds no reason to sanction the Defendant based upon Plaintiff's allegations. Sanctions are an extreme remedy and Plaintiff has not shown that the facts warrant such a severe response. Accordingly, Plaintiff's motion for sanctions is denied.

### IV.   Conclusion

Plaintiff and her family suffered a tragic loss due to the underlying automobile accident, and nothing in this order is intended to diminish that fact. However, the uncontroverted facts in this case illustrates a defect in Plaintiff's claim that cannot be remedied.

Accordingly, Plaintiff's motions (Doc. 84, 99) are DENIED. Defendant's motion for summary judgment (Doc. 86) is GRANTED, which renders its motion to exclude expert testimony (Doc. 88) MOOT.

IT IS SO ORDERED this 8th day of November, 2021.

　　__s/ John W. Broomes_____
　　JOHN W. BROOMES
　　UNITED STATES DISTRICT JUDGE

---

[2] Because summary judgment is being awarded to Defendant, the motion to exclude expert testimony (Doc. 88) is rendered moot.